THOMAS H. STRINGHAM, Appellant, *v.* CORNELIA M. STEWART, Respondent.

The rule which excuses a master from liability to a servant for injuries, caused by the negligence of a co-servant, presupposes that the master has performed the duties which the law imposes upon him, and that no negligence in this respect contributed to the injury.

Where, therefore, the master has furnished a dangerous and defective machine he is not excused from liability for an injury to his servant, which would not have happened had the machinery been safe and suitable, by the fact that the negligence of a fellow servant co-operated in producing the injury ; and this, although the machine, by the exercise of care and caution, might have been operated so as not to cause injury.

(Submitted October 23, 1885 ; decided November 24, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made February 13, 1883, which affirmed a judgment in favor of defendant, entered upon an order nonsuiting plaintiff on trial.

This action was brought to recover damages for injuries sustained by plaintiff, an employe of defendant, caused by the fall of an elevator in defendant's warehouse, which plaintiff alleged " was defective in construction and unprovided with the proper appliances for safety," and that the injury was caused by such defects.

The material facts are stated in the opinion.

*A. H. Dailey* for appellant. The action is based on a negligent act, which is of such gross character as to make it an absolute wrong. (*Corcoran,* v. *Holbrook*, 59 N. Y. 521 ; *Clifford* v. *Dam*, 81 id. 52.) The master failed in his duty to provide his servant with a reasonable safe appliance with which to do the work assigned him. (*Ford* v. *F. R. R. Co.*, 110 Mass. 255–6 ; *Fuller* v. *Jewett*, 80 N. Y. 52 ; *Keegan* v. *W. R. R. Co.*, 8 id. 175 ; *Delaney* v. *Hilton*, 50 N. Y. Super. 341 ; Thomp. on Neg. 994 ; *Chapman'* v.

*Erie R. Co.*, 55 N. Y. 584; Cooley on Torts, 556, 557; *Hackett* v. *M. Mfg. Co.*, 101 Mass. 101; *Courtney* v. *Cornell,* 49 Sup. Ct. 286; *Green* v. *Banta,* 48 id. 156; *Holden* v. *F. R. R. Co.*, 129 Mass. 268; *Coombs* v. *N. B. C. Co.*, 102 id. 572; *Paterson* v. *Wallace,* 1 Macq. 747; *Huddleston* v. *L. M. S.*, 106 Mass. 282.) The servant does not accept risks latent in his employment, but it is the master's duty to inform him of them. (Whart. on Neg., §§ 210, 211; *Ryan* v. *Fowler,* 24 N. Y. 410; *Cone* v. *D., L. & W. R. R. Co.*, 81 id. 206.) The omission of the defendant to provide adequate space between the cross-beam of the elevator and the pulley-beam above, to enable the engineer to correct and overcome any accidental movement of the elevator above the level of the platform above the third story from miscalculation of the force of steam, or the turning of the valve, or the fouling or doubling of the rope, was gross negligence on the part of the defendant to provide a reasonably safe appliance for her servant, the plaintiff. (*Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 546; *De Groff* v. *N. Y. C. R. R. Co.*, 76 id. 125; *Kirkpatrick* v. *Same,* id. 241; *Laning* v. *N. Y. C. R. R. Co.*, 49 id. 521; *Fuller* v. *Jewett,* 80 id. 46.) The fact that the wire rope broke placed the burden upon defendant of showing that in its selection, and in its continued use, reasonable prudence and care were exercised. (*Flike* v. *B. & A. R. R. Co.*, 53 N. Y. 549; *Booth* v. *B. & A. R. R. Co.*, 73 id. 40; *Corcoran* v. *Holden,* 59 id. 518; 3 Macq. 275; 2 id. 34; 49 N. Y. 522.) The plaintiff properly relied upon the natural and legal obligation of the respondent to discharge her duty and not place him in a position of peril without due notice to him, and failing in that duty she becomes liable in damages for his injuries. (Shearman on Neg., § 95; *Ernst* v. *H. R. R. R. Co.*, 37 Barb. 292; *Mackay* v. *N. Y. C. R. R. Co.*, 35 N. Y. 75; *Newson* v. *Same,* 29 id. 383; *Russell Mfg. Co.* v. *N. Y. S. Co.*, 50 id. 121.) The case was properly one for the jury. (*Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 N, Y. 553.)

*Charles C. Smith* for appellant. Defendant's agent and

superintendent was her *alter ego,* having entire control and management of her farm and business, where the accident in question occurred, and for his negligence, carelessness and omissions of duty in the premises the defendant is responsible. (*Fuller* v. *Jewett,* 80 N. Y. 46 ; *Corcoran* v. *Holbrook,* 59 id. 517 ; *Brickner* v. *N. Y. C. R. R. Co.,* 49 id. 672 ; *Wright* v. *Same,* 25 id. 562 ; *Malone* v. *Hathaway,* 64 id. 5 ; *Flike* v. *B. & A. R. R. Co.,* 53 id. 549 ; *Laning* v. *N. Y. C. R. R. Co.,* 49 id. 521 ; *Crispin* v. *Babbitt,* 81 id. 516 ; *Plank* v. *N. Y. C. & H. R. R. R. Co.,* 60 id. 607 ; *Besel* v. *Same,* 70 id. 171 ; Whart. on Neg., § 229.)   It was defendant's duty to furnish an elevator and machinery properly constructed and provided with suitable hoisting and other appliances as were requisite to make it safe for the use of plaintiff while in the performance of his duty.   This was an obligation to be affirmatively and positively performed. (*Warner* v. *E. R. Co.,* 39 N. Y. 468 ; *Laning* v. *N. Y. C. R. R. Co.,* 49 id. 521 ; *Leonard* v. *Collins,* 70 id. 90 ; *Gibson* v. *P. R. R. Co.,* 46 Mo. 163 ; *Shanny* v. *A. Mills,* 66 Me. 420 ; *Durkin* v. *Sharp,* 88 N. Y. 225 ; *Marshall* v. *Stewart,* 33 Eng. L. & Eq. 1 ; *Slater* v. *Jewett,* 85 N. Y. 61 ; *Murphy* v. *B. & A. R. R. Co.,* 88 id. 148 ; *Connolly* v. *Poillon,* 41 Barb. 366 ; *Sheehan* v. *N. Y. C. & H. R. R. R. Co.,* 91 N. Y. 334 ; *Painton* v. *North. C. R. R. Co.,* 83 id. 7 ; *DeGraaf* v. *N. Y. C. & H. R. R. R. Co.,* 16 id. 125 ; *Plank* v. *Same,* id. 607 ; *Laning* v. *Same,* 49 id. 521 ; 79 id. 242 ; *Bricknor* v. *N. Y. C. & H. R. R. R. Co.,* 49 id. 672 ; *Booth* v. *B. & A. R. R. Co.,* 73 id. 38 ; *Ellis* v. *N. Y., L. E. & W. R. R. Co.,* 95 id. 546 ; *Fuller* v. *Jewett,* 80 id. 46 ; *Keegan* v. *W. R. R. Co.,* 8 id. 175 ; *Cone* v. *D. & L. R. R. Co.,* 81 id. 206 ; *Kain* v. *Smith,* 89 id. 375 ; *Paulmier* v. *E. R. Co.,* 34 N. J. L. 151 ; *Ackerson* v. *Dennison,* 117 Mass. 407 ; *Walsh* v. *Put. Valve Co.,* 110 id. 23 ; *Summersell* v. *Fish,* 117 id. 312 ; *Stevenson* v. *Jewett,* 16 Hun, 210 ; *Brydon* v. *Stewart,* 2 Macq. H. L. Cas. 30 ; *Devlin* v. *Smith,* 89 N. Y. 470 ; *Noyes* v. *Smith,* 28 Vt. 59 ; Shearm. & Red. on Neg., § 92 and note ; *Ryan* v. *Fowler,* 24 N. Y. 410 ; *Steinweg* v. *E. R. R. Co.,* 43 id. 123 ;

*Mattison* v. *N. Y. & E. R. R. Co.*, 62 Barb. 364; *Ashworth* v. *Stanwix*, 3 El. & El. 701; Thomp. on Neg. 972, 973; *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y. 562; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 id. 546; *Ogden* v. *Rummens*, 3 Fost. & Fin. 751; *Davis* v. *England*, 10 Jur. [N. S.] 1235.) The principle that if a master employs ignorant and inexperienced workmen in dangerous employments, and exposes them improperly and carelessly to risks of which he is cognizant, and which are unknown to them, he is liable for the consequences, is applicable to this case. (*Homer* v. *Everett*, 91 N. Y. 641; *Shaw* v. *Sheldon*, 21 N. Y. Weekly Dig. 489; *Wonder* v. *B. & O. R. R. Co.*, 32 Md. 411; *Newson* v. *N. Y. C. R. R. Co.*, 29 N. Y. 383; *Cayzer* v. *Taylor*, 10 Gray, 274; *Baxter* v. *Roberts*, 44 Cal. 187; *McGatrick* v. *Wason*, 4 Ohio, 566; *Webb* v. *Rennie*, 4 Fost. & Fin. 751; *Ogden* v. *Rummens*, 3 id. 608; *Wiens* v. *Mathuson*, 4 Macq. H. L. Cas. 215; *B. C. Co.* v. *Reid*, 3 id. 266; *Perry* v. *Marsh*, 25 Ala. 659; *Holmes* v. *Clarke*, 6 Hurlst. & N. 349; *Williams* v. *Clough*, 3 id. 258; *Paterson* v. *Wallace*, 1 Macq. H. L. Cas. 748; *Davis* v. *England*, 10 Jur. [N. S.] 1235; *Spelman* v. *F. I. Co.*, 56 Barb. 151; *Coombs* v. *N. B. C. Co.*, 102 Mass. 572; Shearm. & Redf. on Neg., §§ 86, 92, and notes; *Dana* v. *N. Y. C. R. R. Co.*, 92 N. Y. 639; *McCosker Case*, 84 id. 77; *Murphy* v. *N. Y., L. E. & W. R. R. Co.*, 19 Weekly Dig. 414; *McGatrick* v. *Wason*, 4 Ohio St. 366; *Dixon* v. *Rankin*, 14 Ct. Sess. Cas. 420; *Ashworth* v. *Stanwix*, 3 El. & El. 701; *Noyes* v. *Smith*, 28 Vt. 59; *Davis* v. *England*, 10 Jur. [N. S.] 1235; *Railway Co.* v. *Fort*, 17 Wall. [U. S.] 554; *Walsh* v. *Peit V. Co.*, 110 Mass. 23; *Coombs* v. *N. B. C. Co.*, 102 id. 572; Whart. on Neg., § 212; *Meehan* v. *S., etc., R. R. Co.*, 73 N. Y. 585; *Vosburgh* v. *L. S. & M. S. R. R. Co.*, 18 Weekly Dig. 310; Shearm. & Redf. on Neg., §§ 30, 92, 93; *Smith* v. *Dock Co.*, L. R., 3 C. P. 326.) It did not vary the circumstances or grounds of liability, or tend to exonerate defendant because a particular part of the apparatus was deficient merely in its structure, or ill-proportioned, if the defendant knew, or should have known, that by reason of such incompleteness or deficiency

in its construction, and as used and employed by her workmen in the usual course of her business, it was dangerous and unsafe in its operation and liable to injure those using it, and took no measures to advise them of the danger they incurred, and made no provision for their safety. (*Coughtry* v. *Glove Co.*, 56 N. Y. 124; *Patterson* v. *Wallace*, 1 Macq. 748; *Roberts* v. *Smith*, 2 Hurlst. & N. 213; *Clarke* v. *Holmes*, 7 id. 937; Shearm. & Redf. on Neg., §§ 93, 94; *Avilla* v. *Nash*, 117 Mass. 318; *C., etc., R. R. Co.* v. *Taylor*, 69 Ill. 461; *Riley* v. *Roxendale*, 6 Hurlst. & N. 446; *Sullivan* v. *India Manuf. Co.*, 113 Mass. 396; *Sheehan* v. *N. Y. C. & H. R. R. R. Co.*, 91 N. Y. 322; *Swartz* v. *Edgar*, 59 id. 28; Thomp. on Neg. 972, 996, and notes; *O'Donnell* v. *A. V. R. R. Co.*, 59 Penn. St. 239; *Williams* v. *Clough*, 3 Hurlst. & N. 758; *Vosburgh* v. *L. S. & M. S. R. R. Co.*, 94 N. Y. 374; *McGatrick* v. *Wason*, 4 Ohio St. 466; *Shaw* v. *Sheldon*, 21 Weekly Dig. 489; *Ford* v. *F. R. R. Co.*, 110 Mass. 240; *Hayden* v. *S. Manuf. Co.*, 29 Conn. 548; Thomp. on Neg. 973, 1008, and notes; *Knox* v. *C. R. R. Co.*, 32 Iowa, 357; *Ernst* v. *H. R. R. Co.*, 35 N.Y. 9; *Newson* v. *N. Y. C. R. R. Co.*, 29 id. 383; *Mackay* v. *Same*, 35 id. 75; *Buzzell* v. *Laconia, etc., Co.*, 48 Me. 113; *Le Clair* v. *St. Paul, etc., R. R. Co.*, 20 Minn. 9; *F. W., etc., R. R. Co.* v. *Gildersleeve*, 33 Mich. 133.) It was the duty of defendant to use diligence and reasonable care in supplying competent and efficient co-workers with plaintiff. (*Mann* v. *President, etc.*, 91 N. Y. 495; Shearm. & Redf. on Neg., §§ 28, 89, 91, 93, 109, and notes; Thomp. on Neg. 981; *Gilman* v. *E. R. Co.*, 10 Allen, 233; *Crutchfield* v. *R., etc., R. R. Co.*, 76 N. C. 320.) The plaintiff did not undertake, impliedly or otherwise, the risk of any negligence on part of defendant, that he was ignorant of, did not comprehend, or had any reason to anticipate. (Shearm. & Redf. on Neg., §§ 89, 91, 95; Thomp. on Neg. 980, 981, and notes; *Edwards* v. *B. R. R. Co.*, 1 Fost. & Fin. 531; Pierce on R. R. 379; *Cone* v. *D. & L. R. R. Co.*, 81 N. Y. 206; *Bills* v. *D. & L. R. R. Co.*, 84 id. 13.) The law will never hold it imprudent in any one, in the absence of notice or knowledge to the contrary, to act upon the pre-

sumption that another in his conduct will act in accordance with the rights and duties of both. (Shearm. & Redf. on Neg., §§ 28, 30, 92; *Hawley* v. *N. C. R. R. Co.*, 82 N. Y. 320; Thomp. on Neg. 975–980 ; *Russell Mfg. Co.* v. *N. H. S. Co.*, 50 N. Y. 121.) The nature of the accident itself afforded *prima facie* evidence of the presumption of negligence on part of defendant, and clearly indicated that the elevator was improperly constructed without safeguards and dangerous, especially when the evidence to that effect is considered and that danger was apprehended on account of its construction and its operating machinery. (*Murphy* v. *N. Y., L. E. & W. R. R. Co.*, 19 W. Dig. 414; *Schwier* v. *N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 558; *Bleeker* v. *Johnson*, 69 id. 309 ; Shearm. & Redf. on Neg. §§ 13, 13a, and note; *R. Mfg. Co.* v. *N. H. S. Co.*, 50 N. Y. 121 ; *Caldwell* v. *N. J. S. Co.*, 47 id. 232.) Where several proximate causes contribute to an accident, and each is an efficient cause without the operation of which the accident would not have happened, it may be attributed to all or any of these causes. (*Ring* v. *City of Cohoes*, 77 N. Y. 83.) Negligence is a mixed question of law and fact, and should only be determined by the court alone against a party, when the undisputed facts show the omission or commission of some act on his part which the law adjudges to be negligence. (*Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464; *Seybolt* v. *N. Y., L. & W. R. R. Co.*, 95 id. 562; *Painton* v. *N. R. R. Co.*, 83 id. 7; *Payne* v. *T. & B. R. R. Co.*, id. 72; *Homer* v. *Everett*, 91 id. 641; *Thurber* v. *H. B. M. & F. R. R. Co.*, 60 id. 326; *Byrne* v. *N. Y. C. & H. R. R. R. Co.*, 83 id. 620; *Kane* v. *Smith*, 89 id. 375; *Mann* v. *President, etc.*, 95 id. 495; *Durkin* v. *Sharp*, 88 id. 225 ; *Hawley* v. *N. C. R. R. Co.*, 82 id. 370.)

*Horace Russell* for respondent. The defendant was not bound to equip a freight lift in her barn with all the safety appliances of a passenger elevator, simply because workmen some times imprudently rode up and down on it. (*Burke* v. *Witherbee*, 98 N. Y. 562; *DeGraff* v. *R. R. Co.*, 76 id. 125; *Henry* v.

*S. I. R. R. Co.*, 81 id. 373; *Salters* v. *D. & H. C. Co.*, 3 Hun, 338; *Ladd* v. *R. R. Co.*, 119 Mass. 412; *Wonder* v. *R. R. Co.*, 3 Am. Rep. 143.) An employe who contracts for the performance of dangerous duties assumes such risks as are incident to their discharge, and also the risks and perils incident to the use of machinery and property of the employer as it was at the time of the employment, so far as such risks were apparent. (*Evans* v. *R. R. Co.*, 12 Hun, 289; *Ryan* v. *Fowler*, 24 N. Y. 416; *De Graff* v. *R. R. Co.*, 76 id. 125; *De Forrest* v. *Jewett*, 88 id. 264; *Gibson* v. *Erie R. Co.*, 63 id. 449; *Owen* v. *N. Y. C. R. Co.*, 1 Lans. 108; Whart. on Neg., § 214.) Against the negligence of a fellow-servant the master does not contract. (*Burke* v. *Witherbee*, 98 N. Y. 562; *Devlin* v. *Smith*, 89 id. 470; *Felch* v. *Allen*, 98 Mass. 572; *Wood* v. *New B. C. Co.*, 121 id. 252; *Kelly* v. *Boston Lead Co.*, 128 id. 456.) When the defect or danger is as manifest to the servant as to the master, the former cannot recover. (*Clarke* v. *Holmes*, 7 H. & C. 937; *Gibson* v. *Erie R. Co.*, 63 N. Y. 449; *De Forrest* v. *Jewett*, 88 id. 264; *De Graff* v. *R. R. Co.*, 26 id. 125; *Evans* v. *R. R. Co.*, 12 Hun, 289; *Gottlieb* v. *N. Y. L. E. & W. R. R. Co.*, 29 id. 638; *White* v. *Sharp*, 27 id. 97; *Hayden* v. *Smithville Manuf. Co.*, 29 Conn. 548; *Davis* v. *D. & M. R. R. Co.*, 20 Mich. 185; *Baker* v. *A. R. R. Co.*, 23 Alb. L. J. 96; *Ballou* v. *C. & N. W. R. R. Co.*, 26 id. 137; *Kelly* v. *Silver Spring Co.*, 18 id. 354; *Jones* v. *Roach*, 9 J. & S. 248; *Wonder* v. *B. & O. R. R. Co.*, 5 Alb. L. J. 187.)

RUGER, Ch. J. At the close of the plaintiff's evidence the defendant moved for a nonsuit upon the several grounds of contributory negligence on plaintiff's part, the combination of such negligence and that of a co-servant in producing the injury, and the absence of any evidence of negligence on the part of the defendant. This motion was denied, the court thereby assuming that the evidence was then sufficient to carry the case to the jury. The defendant then gave evidence tending to controvert and impeach the testimony produced by

the plaintiff, but we think failed to furnish such a preponderance as rendered the questions arising thereon matters of law. At the conclusion of the evidence the defendant renewed his motion to nonsuit, and to dismiss the case on the whole evidence, and the plaintiff asked to go to the jury upon the questions of fact in the case. The court, without stating the reasons therefor, granted the defendant's motion and denied that of plaintiff's. To both of these rulings the plaintiff excepted. Upon appeal to the General Term the judgment of the trial court was affirmed.

We are unable to see upon what ground these various decisions can be reconciled or supported. Upon the trial, and while the plaintiff was engaged in giving evidence of experts as to the proper construction of elevators with respect to their safety, the defendant's counsel interrupted its progress by conceding that the elevator in question was not constructed as one intended to carry passengers or people should be. This concession necessarily forecloses any discussion as to the negligence of the defendant in omitting to perform the duty of furnishing safe and adequate machinery for the performance of the work in question, and narrowed the issues to be tried to those of contributory negligence. Whether the defendant's employes were authorized or permitted to make use of the elevator in prosecuting their work, and whether the injury occurred in consequence of the use made of it by the plaintiff in riding to the upper floor. The evidence clearly required the submission of these questions to the jury. It showed that the injuries occurred in consequence of the fall of the elevator used in defendant's warehouse at Garden City in the prosecution of work which the plaintiff was employed to perform. This elevator was used in hoisting grain from the lower to the upper floors of the warehouse, with the view of their having it there distributed either in a fanning-mill to be cleaned or into bins for storage. The usual method of carrying on this business was for the servant charged with its performance to load the grain into a van capable of holding some thirty or forty bushels, and when loaded to push it on to the elevator and cause the engi-

neer to apply the power necessary to raise it to the floor intended, and when that was reached to attend there to its distribution. On arriving at that floor certain marks upon the cable running into the engine room indicated to the engineer that the elevator had reached its place of destination. That point on the occasion in question was a platform above the second floor communicating with tramways upon which the vans were to carry the grain to the desired place. When the elevator arrived at this platform six inches space alone interposed between the top of the elevator and the pulley beam through which the cable ran. There was evidence showing that it was the custom of the servant having charge of the van to ride in the elevator to the place of destination and then push the van on to the tramways and along them to the place of delivery.

Upon the occasion in question the plaintiff ascended with the elavator until it stopped about an inch below the level of the intended platform ; he then stepped from the elevator upon the platform and attempted to push the van off on to the tramways. While thus engaged the engineer suddenly applied the power and caused the elevator to ascend until its top struck the pulley beam, and being thus prevented from going higher, the cable was broken and the elevator with its load fell a distance of some thirty or forty feet, to the bottom of its well, carrying the plaintiff with it and causing serious injuries to him.

If the question as to the sufficiency of the evidence to carry the question of the defendant's negligence to the jury was now open for consideration we should entertain no doubt of the plaintiff's right to have it determined by them. The proof upon the trial showed that no appliance or safety guard, such as is usual and customary, even on freight elevators, to arrest their fall in case of a break in the cable, was provided by its constructors, and that its motion was regulated entirely by an engineer who could have no ocular observation of its position. It is apparent that the space between the pulley beam and the elevator when it arrived at the upper platform left but little leeway to guard against the possible inattention or error of the

engineer, or his inability to control with mathematical precision the motion of the elevator and arrest its ascent in time to avoid a collision between the car and the beam suspending the cable. The danger of so constructing an elevator as to require unremitted attention and faultless accuracy on the part of a fallible agency in the application of power thereto in order to avoid serious injury to persons transported on it is so obvious that it needs neither proof nor argument to establish its existence. The evidence did show that the elevator and pulley beam had collided before, and the marks of their contact were apparent on the beam, and the defendant's superintendent testified "that the danger was so apparent it was pointed out by me to each one of them, and I indicated where the rope would be broken, exactly where it was."  " The point of difficulty was the over-winding of the rope by the extra turning of the engine and striking on the top, and sooner or later an accident would occur of that nature."

Upon the trial the defendant did not even attempt to establish the safety of the elevator's construction but directed her evidence to those facts tending to show that the workmen were not authorized to ride on it while it was transporting grain, and her superintendent testified that he had previously notified the plaintiff and another servant of the danger to be apprehended by those riding on it, and forbade them from doing so. On the other hand testimony was given showing that the superintendent had himself ridden on it in the view of the workmen; that he had directed the servants employed in moving grain to ride thereon while performing their work, and it was expressly testified by each of the employes called who had been engaged in working with the elevator that he had not been forbidden to ride on it or notified that it was dangerous to do so.  It was in proof that visitors had occasionally been taken up in the elevator, and the defendant's superintendent testified that he had told the employes that it was safe to come down in it, or ride to the second floor, but not to the platform above.  No written or printed notice had ever been given by the defendant that the elevator was unsafe or not in-

tended for the use of the employes in performing their work, and it was in proof that it was constantly used by them with the knowledge of defendant's superintendent.

A serious question of fact thus appears to have been presented by the evidence as to the use intended to be made of the elevator by the defendant. It was quite competent for the jury to find, upon the evidence, that the servants of the defendant were induced and encouraged to ride on it by the expectation and consent of the defendant in the prosecution of the work for which they were employed.

It was conceded by the General Term that the elevator was defective and unsafe for passengers, and that it was the duty of the master to use reasonable care and caution in the selection of implements, tools and machinery for the use of her servants in their employment; but the judgment was affirmed upon the ground that the accident occurred through the carelessness of a co-servant which was there held to be one of the risks of service assumed by the plaintiff in entering the employment.

We do not concur in this opinion. It has recently been several times held in this court that co-operation of the negligence of the master and a co-servant in the production of an injury to an employe, does not excuse the master from liability therefor. (*Fuller* v. *Jewett*, 80 N. Y. 46; *Cone* v. *D., L. & W. R. R. Co.*, 81 id. 209; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 id. 546.) That a fellow servant may, by care and caution, operate a defective and dangerous machine so as not to produce an injury to others, does not exempt the master from his liability for an omission to perform the duty which the law imposes upon him of exercising reasonable care and prudence in furnishing safe and suitable appliances for the use of his servants. The rule which excuses the master under such circumstances presupposes that he has performed the obligations which the law imposes upon him, and that the injury occurs solely through the negligence of the co-employe. (*Pantzar* v. *Tilly Foster Mining Co.*, 99 N. Y. 368.)

The testimony of the plaintiff shows that he had no knowledge of the defects in the machinery in question, and could not,

therefore, be chargeable with the responsibility of knowingly using such machinery. Even if we assume that the elevator was not designed for the use of the workmen in riding upon it in the prosecution of their work, it does not follow, from the evidence as a matter of law, that the injury in question was produced by the act of riding in it. The testimony is to the effect that the plaintiff had arrived at the upper platform and had stepped out and safely landed thereon before the accident, and was engaged in pushing the van on to the platform when it occurred. This work it was obviously his duty to do, however he had arrived at the place of its performance, and it was while he was thus engaged that the accident occurred. It was quite competent for the jury to have found, that even if he had gone to the upper platform by the stairs or otherwise, that the injury still would have been produced in the manner shown by the evidence.

In every view we have been able to take of the case questions of fact are presented requiring its submission to the jury.

The judgments of the courts below should be reversed, and a new trial ordered, with costs to abide the event.

All concur.

Judgments reversed.