(27 App. Div. 48.)

### CAVANAGH v. O'NEIL.

(Supreme Court, Appellate Division, First Department.    March 11, 1898.)

1   INJURY TO EMPLOYE—SAFE PLACE.

It is a question for the jury whether a safe place in which to work was provided a sales girl stationed in a store at a counter in a space 2 feet 2 inches between it and a show case 6½ feet high, with no rail around the top, and with dress forms thereon, subject to be toppled over by a draft from the open window, or the moving of furniture on the floor above; especially one in which the iron extending from the tripod to the loaded figure was bent.

2.  SAME—FELLOW SERVANTS.

A master is not excused from liability for injury to an employé from want of a safe place in which to work, because the lack of safety was due to omission of a fellow servant.

Appeal from trial term, New York county.

Action by Catherine J. Cavanagh against Hugh O'Neil. From judgment for defendant, plaintiff appeals.    Reversed.

The plaintiff, who was a sales girl, employed by the defendant in his store, sued to recover for personal injuries sustained through the alleged negligence of the defendant.    On the 15th of December, 1892, the plaintiff was stationed at a counter which ran along in front of a show case distant 2 feet and 2 inches from it, and in that narrow space the plaintiff stood.    The show case was 6 feet 6 inches high, having a flat top, 3 feet 1½ inches wide.    Back of the show case was a window, the bottom of which was a little higher from the floor than the top of the show case.    The window was open at the top.    On top of the show case, behind the plaintiff, and in front of the open window, the defendant had caused to be placed a dress form, having a tripod with an iron rod running up from its center, on which was a bust for the exhibition of garments, having thereon a sack, the whole figure being about 3 feet high.    The cord of the window shade hung down over the show case, and over or alongside of the figure. There was no rail or coaming on top of the show case, or other means of preventing the figure, if it should tip over, from falling to the floor; and the figure was not fastened in any way in its position on the show case.    The figure was one of twenty which were put along on top of the show case every morning by the packers employed by the defendant, and taken down by them at night. The plaintiff had nothing to do with taking them down or placing them in position.    It had been there from about half past 8 in the morning until about 1 o'clock, when it fell, and struck the plaintiff on the head, causing the injuries for which she seeks to recover.    There was testimony tending to show that for some time prior thereto, and at the time of the accident, the figure was out of repair; that the rod was bent and loose at the base, so that the figure, with the garment upon it, as it stood on the show case, was seen by other employés in the store to shake, as if it were going to fall.    One witness said that furniture was kept on the floor above, and, when that was moved around, it would cause this figure to shake.    Others said they had observed it shake while the window was open behind it; and one of the witnesses said that in the morning, before the accident, she had seen the figure shaking, and had felt a draft from that window.    But precisely what caused it, after standing in the same condition from half past 8, to fall, at about 1 o'clock, is not made to appear.    It does appear that no one was interfering with the shade cord at the time.    The plaintiff, in the third paragraph of the complaint, alleges: "That on or about the 15th day of December, 1892, the defendant, in violation of his duty to this plaintiff, wrongfully and negligently placed or permitted or directed a heavy figure or model, made of wood and iron, and defectively constructed, or which had become out of repair and unsafe and dangerous, to be placed upon a shelf or show case, which was also in a defective condition, and in front of which this plaintiff was standing, in the performance of her duties as saleswoman, as aforesaid, in ignorance of such defective construction or want of repair or of the said danger; and that by reason of said wrongful and negligent conduct of the defendant in

so placing, or permitting or directing said figure or model to be placed, as afore-said, it fell upon this plaintiff, striking upon her head, and felling her to the floor of said store, and causing great injury to her head and brain and nervous system." The court refused to admit proof offered that other models, irre-spective of their construction or condition of repair, had previously fallen under like circumstances from the same show case at the same place; and, at the close of the plaintiff's case, the complaint was dismissed, and from the judgment thereafter entered the plaintiff appeals.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTER-SON, O'BRIEN, and INGRAHAM, JJ.

Abel Crook, for appellant.
Herbert C. Smyth, for respondent.

O'BRIEN, J.    In determining the correctness of the ruling made in dismissing a complaint, it has been many times said that all the facts proven must be taken most favorably for the plaintiff, and the dis-missal cannot be supported unless the inferences to be drawn from the circumstances are certain and incontrovertible, and as to which persons cannot differ.    In this case, therefore, the motion to dismiss should have been denied if any inferences from the facts warrant the conclu-sion that the defendant was negligent.    While the plaintiff contends that her proof justified the inference that, in any one of three aspects, the defendant's negligence was shown, it is only necessary for us, in disposing of this appeal, to consider one, together with certain rules in excluding evidence, which we think render necessary a reversal of the judgment.    The testimony tended to show that the place in which the plaintiff was put to work was a dangerous place, rendered so by a com-bination of circumstances, with none of which had she any connection either by reason of her action or knowledge.    As shown by the proofs, there was placed over her head a figure or model having a narrow base, and which was in a defective condition, on account of the rod becom-ing bent, so that the loaded figure was out of poise; and there was ab-sent a tin socket originally attached to the base, so that the figure was liable to be shaken whenever it was affected by the moving of furniture on the floor above; and it was also left in doubt as to whether it could not be moved by a current of air which came through an open window behind it.    Besides, its situation on the flat top of the show case in front of such window, in connection with its liability to be affected by currents of air, was an element of danger.    Again, we have the omis-sion to provide some protection against the figure on top of the case fall-ing when thus exposed to the danger of being blown or jarred or pulled over.    These, added to the fact that the plaintiff was in a narrow place, only two feet two inches wide, in which it was her duty to stand, pre-sent a state of facts and circumstances from which the jury might have inferred that where she was put to work was a dangerous place.    It cannot, as matter of law, be held, upon the proof, that she knew of the facts and circumstances which so rendered it dangerous; but on this question she was entitled to go to the jury.

It is urged, however, that the placing of the figure in a defective condition on the show case, and in proximity to an open window, or one that was likely to be open, was the act of a fellow servant, for which the master was not responsible.    On this subject we need only repeat the

rule that it is the duty of the master to provide a safe place for his employé, and that for an omission to perform this duty, whether it arises from his own act or from the acts of those to whom he may delegate the discharge of that duty, the master is liable.

We think, also, that in his construction of the complaint, as well as the tendency of the evidence, the learned trial judge erred in assuming that the plaintiff's cause of action was based entirely upon the defective model, and did not give sufficient weight to allegations in the complaint, and to the facts proven which tended to show that the defective condition of the case, coupled with the other facts, rendered the place dangerous.

We think a like error was committed by the judge in refusing to permit proof that other models, irrespective of their construction or condition of repair, had previously fallen, under like circumstances, from this show case at the same place. Such evidence, we think, was competent, as tending to show that a figure so placed would be liable to overturn and fall, no matter what its condition, and it would follow that one defectively constructed would be equally liable to fall when exposed to like conditions. Quinlan v. City of Utica, 11 Hun, 217, affirmed 74 N. Y. 603; Gillrie v. City of Lockport, 122 N. Y. 407, 25 N. E. 357; Brady v. Railroad Co., 127 N. Y. 50, 27 N. E. 368.

Our conclusion is that the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.