(128 App. Div. 705.)

DEVINE v. HAYWARD.

(Supreme Court, Appellate Division, Third Department.   November 11, 1908.)

1. APPEAL AND ERROR (§ 927*) — DISMISSAL OF COMPLAINT — REVIEW OF EVIDENCE.
     Plaintiff, on appeal from a judgment dismissing the complaint at the close of the evidence, is entitled to the most favorable inferences fairly deducible from the testimony.
     [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3748; Dec. Dig. § 927.*]

2. MASTER AND SERVANT (§ 287*) — EMPLOYER'S LIABILITY ACT — INJURY TO SERVANT—ACTS OF SUPERINTENDENCE—EVIDENCE—QUESTION FOR JURY.
     In an action under the employer's liability act (Laws 1902, p. 1748, c. 600) for the death of an employé while engaged in erecting a gas holder in consequence of being struck by a side plate falling on him, evidence held sufficient to go to the jury on the issue whether the accident was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

caused by an act of a co-employé while in the exercise of superintendence under the authority of the employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1051–1067; Dec. Dig. § 287.*]

3. MASTER AND SERVANT (§ 287*) — EMPLOYER'S LIABILITY ACT — INJURY TO SERVANT—ACTS OF SUPERINTENDENCE—NEGLIGENCE.

In an action under the employer's liability act (Laws 1902, p. 1748, c. 600), for the death of an employé, engaged in erecting a gas holder, in consequence of being struck by a side plate falling on him, evidence *held* sufficient to go to the jury of the issue whether the act of a co-employé in the exercise of superintendence which caused the accident was negligent.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1051–1067; Dec. Dig. § 287.*]

4. MASTER AND SERVANT (§ 201*) — INJURY TO SERVANT—CONCURRENT NEGLIGENCE OF EMPLOYER AND FELLOW SERVANT.

An employer is liable for the death of an employé, caused by the concurrence of a negligent act of the employer and of a fellow servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 515–534; Dec. Dig. § 201.*]

5. MASTER AND SERVANT (§ 289*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Whether an employé, killed while engaged in erecting a gas holder by being struck by a side plate falling on him, was guilty of contributory negligence, *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

Appeal from Trial Term, Albany County.

Action by Mary G. Devine, administratrix of William J. Devine, deceased, against Thomas J. Hayward. From a judgment dismissing the complaint on the merits at the close of the evidence, plaintiff appeals. Reversed, and new trial granted.

The action is for damages for the alleged negligent killing of the plaintiff's intestate. It is brought under the employer's liability act (Laws 1902, p. 1748, c. 600). The defendant was engaged in the erection of a gas holder, 150 feet in diameter, designed to hold about 2,000,000 cubic feet of gas. The foundation and bottom of the holder had been completed, and work had been commenced in the erection of the shell or side plates. While moving one of these plates it fell, causing the death of the plaintiff's intestate. The plate was being moved upon a skid made of two stringers of spruce, 4 inches by 6 inches and 16 feet long. Nailed to these, and separating them about 5 feet apart, were three cross-pieces of spruce plank, 2 inches thick by 9 inches wide and about 5 feet in length, one fastened near either end and the other in the center. There was what is known as an "A frame" in the center, made of two upright pieces of plank, 2 inches thick, 9 inches wide, and about 5 feet long, attached with nails at the bottom to the center cross-piece, and of two boards, 1 inch thick and 6 inches wide, running from near the top of each of the uprights to the opposite end of the center cross-piece and nailed at each end. The center cross-piece projected beyond the stringer upon one end about 3 or 4 inches. The plate which fell while being moved was 29 feet 6 inches long, about 4½ feet wide, $1\frac{1}{32}$ inches thick, and weighed about 3 tons. It had a curvature of about 22 degrees, with a 75-foot radius, so that, if a straight line were drawn between the ends of the plate, it would pass about 2 feet from its center. The plate was placed on its edge on one side of the skid, leaning against the A frame and lashed with a rope passing through bolt holes near the center at the top, to the top of the two uprights and resting at the bottom in the center upon the projecting cross-piece and near the ends upon the other two cross-pieces. The whole load was being moved by the aid of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

three rollers 5 or 6 inches in diameter under the stringers. These had to roll over the projecting bolt heads about three-eighths of an inch high in the iron plates forming the finished bottom of the tank, which caused a considerable jarring of the load. The work was in charge of one Mason, the superintendent of the defendant, and one Brennan, who was the foreman under him. There were about 25 men engaged in the construction of the tank. These were divided into several gangs, performing different parts of the work. One Hilt was the leader or "boss" of the gang in which the deceased worked. Several plates had been moved and placed in position without accident. The plate in question was being moved on the skid and rollers by the men pulling on a rope attached to one end of the plate. When it had been moved about 75 feet it was found that it had been jarred off the projecting end of the cross-piece at the center upon which it had rested. When Hilt saw that it was off, he and some of the men were trying on the outside by the use of bars to pry it back on the cross-beam. At that time, according to plaintiff's evidence, Hilt told Devine to go inside and drive or hammer down the center cross-piece, which had become loosened from the stringer by the nails drawing out. The order was obeyed by Devine, and, after striking one or more blows with a mall where he was directed to, the plate fell upon him, causing his death. At the time when Devine was striking the blow on the inside, Hilt and others were on the outside prying the plate with crowbars, and it was at that moment that the plate fell and crushed Devine. The court, at the close of all the proofs in the case, dismissed the complaint on the ground that it was the act of Hilt in prying on the plate which apparently threw the pressure on the upright and caused the accident, and that that was an act, not of superintendence, but of a co-employé in the performance of a detail of the work.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Richard O Bassett, for appellant.
Joseph P. Coughlin, for respondent.

CHESTER, J. The complaint having been dismissed, the plaintiff is entitled to the most favorable inferences fairly deducible from the testimony. There was some conflict in the evidence as to just what caused the accident—whether it was the act of Hilt in prying upon the outside of the plate, or of Devine in striking upon the cross-piece of the skid on the inside, or whether it was caused by the two acts combined. There was sufficient to justify the inference that the plate fell as a result of the combination of the two acts. The proof is undisputed that the superintendent, Mason, was not at the job when the accident happened, and there is some conflict in the evidence as to whether or not Brennan, the foreman, was there at that time. Brennan himself says that he was on the job, about 50 or 60 feet distant, at the time. The witnesses for the plaintiff testified that he was not there, but came soon after the accident happened. There is also a conflict in the testimony as to whether Hilt was acting as superintendent in the absence of Mason and of Brennan. The defendant insists that Hilt was employed at the same time Devine was to do the same kind of work, and that he had no authority over the men working with him; but because of his age and previous experience he was generally accepted by the men as their leader. Under the defendant's theory, he was what they called a "pusher" of one of the gangs, and not intrusted with superintendence. Under the plaintiff's evidence it was Hilt who was "boss" in the absence of Brennan, and who gave all the directions to the men. It tended to show that he had

full power in such absence to decide what should be done when the plate fell from the skid, and to direct the men as he saw fit what methods should be employed in replacing it.   He received $4 a day, and Devine received from $2 to $2.25 a day.   Even Brennan testified for the defendant that the men had to mind Hilt and him, and if they did not they had to get off the job, and that when he was not there in Hilt's gang the men did what Hilt told them to do.

Upon the foregoing evidence it appears to us that the case was for the jury in the first instance, and that the court could not say as a matter of law that the accident was caused by the act of Hilt, a fellow servant of the deceased, while engaged in a detail of the work.   The accident did not happen when the skid and plate were being rolled along in the usual manner; but the plate had become partially displaced from the skid, so that it could not be moved further until it had been replaced in position.   It was an unwieldy piece of iron, weighing three tons and difficult to handle.   The jury could have found that it required an act of superintendence to decide upon and direct the method of getting the plate back upon the skid, so that the rolling of it along into its place could be again proceeded with, and that the act of Hilt in directing Devine to strike upon the cross-bar, in an effort to consummate the method the former had decided upon for doing that work, was an act in the exercise of superintendence, done by the authority of the defendant in the absence of Brennan, if they found that he was absent.   It was also for the jury to say whether such act was a careless or negligent one under the circumstances.   If it should appear upon the trial that the accident was caused by the concurrence of a negligent act of the defendant and that of a fellow servant, the defendant would, under the authorities, be liable.   Stringham v. Stewart, 100 N. Y. 516, 3 N. E. 575, and cases there cited.

We think, also, the question whether the decedent was guilty of contributory negligence was for the jury.

The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.   All concur.