(10 App. Div. 529.)

LANGIN v. TRUSTEES OF NEW YORK AND BROOKLYN BRIDGE.

(Supreme Court, Appellate Division, Second Department. December 8, 1896.)

1. CARRIERS—INJURIES TO PASSENGERS—NEGLIGENCE—QUESTION FOR JURY.

A woman over 17½ years old, who was neither ill nor infirm, was about to alight with others, at night, from a railroad car, at a platform which was perfectly lighted, and a foot distant from the car. There was a crowd ahead of and behind her. *Held*, that whether it was the duty of the carrier to give passengers adequate warning of danger in passing from the car to the platform on account of the open space between them was a question for the jury.

2. SAME—WARNING TO PASSENGERS.

A woman was about to alight, at night, with others, from a car at a platform of a railroad she had never been on before. The platform was about a foot distant from the car, and well lighted. *Held*, that if a warning to passengers of the danger in passing from the car to the platform was required, it was not the duty of the carrier to give such warning to her personally; but a general warning, such as in the ordinary course of things would be likely to reach all the passengers on their way out, was sufficient.

Appeal from trial term, Kings county.

Action by Bridget Langin, an infant, by Bridget Langin, her mother and guardian ad litem, against the trustees of the New York and Brooklyn Bridge, for personal injuries caused by defendants' negligence. From a judgment rendered on a verdict in favor of plaintiff, and from an order denying their motion for a new trial, entered in the same office February 27, 1896, defendants appeal. Reversed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

James C. Bergen, for appellants.
Edward J. McCrossin, for respondent.

WILLARD BARTLETT, J. The plaintiff, a young woman, then nearly 18 years of age, was injured on the night of November 4, 1894, as she was alighting from a train at the Brooklyn terminus of the New York and Brooklyn Bridge, by falling into a space be-

tween the platform of a bridge car and the curved edge of the station platform. This space was from $8\frac{1}{2}$ to 12 inches in width. The trial court left it to the jury to say whether it was not the duty of the defendants, under the circumstances, to give the passengers adequate and sufficient warning of danger in crossing from the car platform to the station platform, by reason of the existence of this opening between them; and, furthermore, whether any warning was actually given sufficiently specific to call the attention of the plaintiff to the particular source of danger. The jury answered these questions in favor of the plaintiff, and awarded her $2,000 damages for the injuries which she suffered.

In the course of the trial the rulings of the learned judge who presided eliminated from the case all question of the defendants' negligence, except as to their obligation to give warning to the plaintiff of the existence of the opening into which she fell. He expressly held that the jury would not be permitted to draw any inference of negligence on account of the construction of the platform at the bridge terminus, or from the failure to adopt a sliding platform there, such as was in use at the station of the Manhattan Elevated Railroad in New York City; thus assuming that the opening was necessary, and was not greater than prudence would allow, or than necessity required. He also instructed the jury that the evidence was overwhelmingly in favor of the proposition that the platform was properly lighted at the time of the accident, and directed them that they could not find to the contrary. It thus appears that the only ground on which the case was submitted to the jury was the alleged omission of the defendants to warn the plaintiff of the danger to which she was exposed in crossing from the car to the station platform; and the verdict in her favor must be sustained on this ground, if it is sustained at all. Marks v. Railway Co., 146 N. Y. 181, 40 N. E. 782. The evidence, as a whole, presents the case of a young woman, over $17\frac{1}{2}$ years old, called upon to alight, with others, from a railroad car at a platform, which was, at the most, a foot distant from the car. The platform was perfectly lighted. Every person of her age and intelligence must know that some space necessarily intervenes between a car and the platform of a station at which it is drawn up. She was neither ill nor infirm. There was no proof as to whether a distance of 12 inches is greater than the length of an average step; but, whether it is or not, I should hesitate to say that any negligence could be charged against the defendants on account of the existence of such a space between the car and the platform at the bridge station, in the case of a grown person, in good health, attempting to leave the car, with sufficient light and opportunity to perceive the opening. It would be placing too burdensome a responsibility upon common carriers to hold them liable for negligence under such circumstances. But here the injured passenger had never been in the bridge cars before, and she testified that as she left the train there was a crowd ahead of her and behind. However good may have been the light in the station, the presence of numerous other passengers in front might well prevent her from perceiving the extent of the space she

had to step over, even in the exercise of reasonable care. It does not follow, therefore, that because the platform was adequately lighted, the defendants did not owe any further duty of care in the premises. If the crowded conditions of travel were such as to render it difficult for an ordinarily careful person, unfamiliar with the surroundings, to see ahead sufficiently to avoid danger from the necessary opening, then it was incumbent upon the defendants to provide some means whereby to caution the outcoming passengers. Hence, upon the proof, the learned trial judge was right in holding that there was a question for the jury in respect to the alleged omission to give any warning to the persons leaving the car on the occasion of the accident. He went too far, however, in his instructions in regard to the nature of the required warning. He told the jury that, if they found there was necessity for it, and there was a warning given, "there must have been warning given which was brought to the notice of this plaintiff; not a general warning to all passengers; there must have been warning to this plaintiff; because it appears undisputedly that this is the first time she ever crossed the bridge, ever alighted at that station"; and he added that the warning must have been sufficiently specific to call her attention to the particular source of danger. Counsel for defendants duly excepted to the instruc tion that if the jury found a warning necessary they must find that it was specifically brought home to the plaintiff, and I think that instruction was erroneous. Whatever obligation there was to give any warning at all arose, not from insufficient lighting. but from the fact that the crowd leaving the car hid the opening from all the passengers but those who were the first to get off. To guard against injury to persons whose vision was thus obstructed, a general warning, such as in the ordinary course of things would be likely to reach all the passengers on their way out, was all that the defendants could reasonably be called upon to give. Their trainmen and station agent have no means of distinguishing between passengers who have been at the bridge terminus before and passengers who arrive there for the first time; and, even if they had, it would be a physical impossibility for them to go up to each new passenger before he left the car, and tell him to look out for the opening at the platform. The timely utterance of cautionary words in such a tone and of such a character that they ought to be, and naturally would be, heard and understood by passengers giving ordinary attention to what is going on around them, is a full discharge of the obligation which the law imposes upon the common carrier under such circumstances. In the absence of the erroneous instruction to which I have referred, the jury might have thought that the general warning to which the conductor of the train testified was sufficient. On account of this error, and without considering the other questions in the case, I think the judgment should be reversed.

Judgment reversed, and new trial granted, with costs to abide the event. All concur.